IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRAVERLERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

    Plaintiff,

v.

Civil Action 2:18-cv-367
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

LIEBERT CORPORATION, *et al.*,

    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion to Dismiss (ECF No. 32), Plaintiff's Memorandum in Opposition (ECF No. 49), Defendant's Reply Brief (ECF No. 54), and Plaintiff's Motion for Leave to File Su-reply (ECF No. 55-1). For the reasons that follow, Plaintiff's Motion for Leave to File Sur-reply is **GRANTED**, and Defendants' Motion to Dismiss is **DENIED**.

I.

### A. Factual Background

Plaintiff Travelers Property Casualty Company of America ("Plaintiff") is a business insurance corporation located in Hartford, Connecticut. (Compl. ¶ 2, 4, ECF No. 2.). At the time this dispute arose, Plaintiff insured Inovalon, Inc., a data analytics business incorporated in Delaware with its principal place of business in Bowie, Maryland. (*Id.* ¶ 3–4). Inovalon's business insurance policy included coverage for property damage, loss of business revenue, and associated expenses. (*Id.* ¶ 9).

As of January 24, 2016, Inovalon operated a large data center in Bowie, Maryland. (*Id.* ¶ 10). The data center contained numerous computer servers and related equipment. (*Id.*). In order to prevent its computer servers from overheating, Inovalon installed specialized HVAC systems in the data center. (*Id.* ¶ 11). These HVAC systems included specialized air handlers, specifically designed, manufactured, and sold by Defendant Liebert Corporation ("Defendant Liebert"). (*Id.* ¶ 12). Defendant Liebert's air handlers were equipped with compressors and copper tubing designed, manufactured, and sold by Defendant Emerson Climate Technologies, Inc. ("Defendant Emerson"). (*Id.* ¶ 14).

On or about January 24, 2016, a copper tube located in the compressor of one of Defendant Liebert's air handlers failed, releasing refrigerant into the HVAC system. (*Id.* ¶ 18). The leak triggered the data center's fire suppression system, shutting off all air handlers in the data center. (*Id.*). With no air handlers running, temperatures within the data center rose. (*Id.* ¶ 19). As a result, Inovalon's computer equipment sustained significant damage. (*Id.*). Inovalon presented an insurance claim to Plaintiff for property damage, loss of business revenue, and incidental expenses incurred to resume data center operations. (*Id.* ¶ 22). In accordance with Inovalon's existing insurance policy, Plaintiff made payments to Inovalon for the claim. (*Id.*).

**B. Procedural History**

On December 14, 2017, Plaintiff initiated the instant action against Defendants as subrogee of Inovalon in Maryland state court. (*Id.* ¶ 23). Plaintiff alleges two claims for relief.[1] First, Plaintiff asserts a strict products liability claim, arguing the copper tube, compressor, and

---

[1] This Court notes the Plaintiff originally asserted three claims against Defendants: 1) products liability, 2) negligence, 3) and breach of warranty. (Compl., ECF No. 2.) Plaintiff voluntarily withdrew its breach of warranty claim in its Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 49).

2

air handler were unreasonably dangerous, lacked adequate instructions and warnings, and were defective products. (*Id.* ¶ 26). Second, Plaintiff brings a negligence claim. Plaintiff contends Defendants breached their duty of ordinary care in the design, manufacture, and sale of the copper tube, compressor, and air handler. (*Id.* ¶ 31).

Pursuant to 28 U.S.C. §§ 1332 and 1441, Defendants filed a Notice of Removal to the United States District Court for the District of Maryland on February 2, 2018. (ECF No. 1). On February 22, 2018, Defendants filed a Motion to Dismiss, arguing that Plaintiff's Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 32-1). On that same day, Defendants filed a Motion to Transfer the case to the United States District Court for the Southern District of Ohio under 28 U.S.C. §1404(a). (ECF No. 33-1). Defendants argued the transfer was mandatory under a forum selection clause in a sales document between Inovalon and Defendant Liebert. (ECF No. 33-1). Plaintiff consented to the transfer on April 9, 2018. (ECF No. 35). Accordingly, the District of Maryland transferred the case to this Court on April 18, 2018. (ECF No. 36).

After the transfer, Plaintiff filed a Motion in Opposition to Defendants' Motion to Dismiss on June 14, 2018. (EFC No. 49). Defendants responded by filing a Reply in Support of their Motion to Dismiss on July 5, 2018. (ECF No 54). On July 13, 2018, Plaintiff filed a Motion for Leave to File Sur-reply. (ECF No. 55-1). Plaintiff attached its proposed Sur-reply to the motion. Finally, on August 2, 2018, Defendants filed a Memorandum in Opposition to Plaintiff's Sur-reply. (ECF No. 57). All motions are ripe for review.

**II.**

As an initial matter, this Court will address Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 55-1)

3

## A. Legal Standard to File Sur-reply

Although Plaintiff has no automatic right to file sur-reply, additional memoranda are sometimes considered. Local Civil Rule 7.2(a) states that only supporting, opposing, and reply memoranda can be filed, "except upon leave of court for good cause shown." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 207-CV-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (quoting S. D. Ohio Civ. R. 7.2(a)). Generally, "good cause" exists where the reply brief raises new grounds that were not included in movant's initial motion." *Comtide Holdings, LLC*, 2010 WL 4117552, at *4 (citing as examples *Power Marketing Direct v. Moy*, 2008 WL 4849289 (S.D. Ohio Nov. 6, 2008) and *White v. Honda of America Mfg., Inc.*, 191 F.Supp.2d 933, 944 (S.D. Ohio 2002) (holding that the mere fact a sur-reply might be "helpful" is not enough to justify its filing)).

## B. Analysis of Plaintiff's Motion for Leave to File Sur-reply

Defendants assert two arguments in support of their Rule 12(b)(6) motion. First, Defendants argue that Plaintiff's claims lack the specificity required to meet the plausibility test in *Iqbal* and *Twombly*. (Defs.' Mem. in Supp. of Mot. to Dismiss at 1, ECF No. 32-1).[2] Second, Defendants raise a choice-of-law argument in their Reply (ECF No. 54). Defendants contend for the first time in their Reply brief that Plaintiff improperly relies on Maryland law, rather than Ohio law, as a basis for its claims. (Defs.' Reply in Supp. of Mot. to Dismiss at 1, ECF No. 54). In response to Defendants' Reply, Plaintiff filed a Motion for Leave to File Sur-reply on July 13, 2018. (ECF No. 55).

---

[2] All references to page numbers in the parties' motions refer to those numbers generated by the Court's electronic filing system.

Defendants first raised the applicability of Ohio law in their Reply (Defs.' Rep. in Supp. of Mot. to Dismiss at 1). Although Defendants did not discuss Ohio law in their initial motion, they contend the choice-of-law analysis in their Reply merely bolsters existing arguments. (Defs.' Mot. to Strike Pl.'s Sur-reply at 2). Defendants analogize their position to *William F. Shea, LLC* [*v. Bonutti Research, Inc.*, S.D. Ohio No. 210-CV-615, 2011 WL 1256670, at *2], where this Court held that citing to additional case law in support of a movant's initial argument does not constitute new allegations. (Defs.' Mot. to Strike Pl.'s Sur-reply at 3). Moreover, Defendants accurately state that Plaintiff had the opportunity to file its Opposition after the case was transferred to the Southern District of Ohio. (Defs.' Mot. to Strike Pl.'s Sur-reply at 3, ECF No. 57). Plaintiff could have, foreseeing a choice-of-law dispute, preemptively addressed the applicability of Ohio law.

Defendants' arguments are not well taken. Defendants' Reply alters their original argument considerably. In their Motion to Dismiss, Defendants attacked the sufficiency of Plaintiff's pleadings in relation to Maryland causes of action. (*See* Defs.' Mot. to Dismiss at 5–8). Defendants centered their argument on the implausibility of Plaintiff's allegedly "threadbare" and "conclusory" complaint under *Iqbal* and *Twombly*. (*Id.* at 6). Yet Defendants' Reply departs from this analysis. While Defendants again reference *Iqbal* and *Twombly*, they argue Plaintiff's Complaint is insufficient under Ohio tort law. (Defs.' Rep. in Supp. of Mot. to Dismiss at 2). As Defendants' state:

> As such, Ohio law is applicable and this Court should grant Defendants' 12(b)(6) Motion to Dismiss because: 1) common law negligence causes of action are abrogated by the Ohio Products Liability Act; 2) the "indeterminate defect theory" is not a cognizable product liability claim in Ohio; and 3) Plaintiff's causes of action are based on nothing more than speculation and conjecture.

Defs.' Rep. in Supp. of Mot. to Dismiss at 2.

Unlike the defendant in *Shea*, the case upon which Defendants rely, Defendants did not merely cite additional case law to negate Plaintiff's counterarguments. Instead, Defendants introduced new substantive law, including choice-of-law rules, the abrogative effect of the Ohio Products Liability Act, and the "indeterminate defect theory." Moreover, Plaintiff should not be expected to predict Defendants' future counterarguments in their Opposition. Accordingly, this Court finds good cause exists for Plaintiff's Sur-reply. In light of the foregoing, this Court **GRANTS** Plaintiff's Motion for Leave to File Sur-reply.

### III.

This Court will now address Defendants' Motion to Dismiss (ECF No. 32-1) under Rule 12(b)(6).

### A. Legal Standard for Rule 12(b)(6) Motion

In considering whether a complaint survives a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and determine whether the factual allegations present a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. In other words, a complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B. Analysis of Rule 12(b)(6) Motion

### 1. Governing Law

There is now a briefed issue as to whether Ohio or Maryland law applies in the instant action. Defendants maintain that Ohio law applies, whereas Plaintiff contends that Maryland law controls in its Sur-reply. In diversity cases, the Court must apply the choice-of-law rules of the state where it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496. *See also Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) ("Federal courts sitting in diversity must apply the choice-of-law rules of the forum state").

However, when a case is transferred under 28 U.S.C. §1404(a), the transferee forum is required to apply the choice-of-law rules of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990). *See also Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) ("When a case is transferred under section 1404(a), the transferee court must apply the choice of law rules that prevailed in the transferor court"); *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001) ("Because the case was transferred from the Eastern District of Michigan to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a), we apply the choice of law rules of Michigan, the forum of the transferring court"). This rule applies regardless of which party initiated the §1404(a) motion. (*Ferens*, 494 U.S. at 531). As Maryland is the transferor court in the present case, this Court will apply the choice-of-law rules of Maryland.

Maryland applies the doctrine of *lex loci delicti* when determining the applicable law in tort claims. *Laboratory Corp. of America v. Hood*, 395 Md. 608, 613 (2006). Under *lex loci delicti*, the court must "apply the law of the State where the injury—the last event required to constitute the tort occurred." *Erie Insurance Exchange v. Heffernan, et al.*, 399 Md. 598, 620 (2007) (quoting *Laboratory*, 395 Md. at 615). This principle applies even "where the events

7

giving rise to a tort action occur in more than one State." *Mohammad v. Toyota Motor Sales, U.S.A., Inc.*, 179 Md.App. 693, 700 (2008) (quoting *Laboratory*, 395 Md. at 615). Thus, the *Mohammad* court applied Virginia law in a products liability and negligence action where the plaintiff's vehicle malfunctioned in Virginia after undergoing maintenance in Maryland. *Mohammad*. 179 Md.App at 700.

Moreover, Maryland courts have consistently declined to override *lex loci delicti* on policy grounds. *See Erie*, 399 Md. at 633 (Maryland non-economic damage caps did not apply where injury occurred in Delaware); *Black v. Leatherwood Motor Coach Corp.*, 92 Md.App 27, 43 (1992) (law of the forum state, Maryland, did not apply where bus accident occurred in Virginia); *Hartford Mutual Ins. Co. v. Bruchey*, 248 Md. 669, 676 (1968) (husband not permitted to recover consortium under Maryland law where injury occurred in Virginia). While Maryland courts reserve the right to depart from *lex loci delicti* on policy grounds, they suggest the proponent must meet a "heavy burden" to justify an exception. *Erie*, 399 Md. at 634 (quoting *Black*, 92 Md.App at 48).

Aside from a compelling public policy interest, a contractual choice-of-law provision could also preclude the application of traditional *lex loci* analysis. As stated by the Maryland Court of Appeals, it is "generally accepted that the parties to a contract may agree as to the law which will govern their transaction." *National Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606, 610 (1994) (quoting *Kronovet v. Lipchin*, 288 Md. 30, 43 (1980)). Consequently, contractual choice-of-law provisions are generally enforceable in Maryland. *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015) (citing *American Motorists Ins. Co. v. ARATA Group, Inc.*, 338 Md. 560, 573 (1995). Nevertheless, Maryland recognizes two limitations to this rule. *National Glass*, 336 Md. at 610. The parties' choice-of-law agreement will not control if: 1) the

8

chosen state has "no substantial relationship to the parties or the transaction," or 2) the choice-of-law conflicts with a "fundamental policy of a state with a materially greater interest" (citing Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971)).

Turning to the facts of this case, Plaintiff's alleged injury occurred at its data center in Bowie, Maryland. (Compl. ¶ 10). Defendants argue against the application of Maryland law, claiming that Ohio has a more significant relationship to the claims at issue than Maryland. (Defs. Rep. in Supp. of Mot. to Dismiss at 1). According to Defendants, Plaintiff's product liability and negligence claims are more directly related to the design, manufacture, and sale location of the allegedly defective products than the location of the incident. (*Id.*). Defendants cite persuasive authority in support of their position, pointing out that some courts place diminished emphasis on the location of the accident in products liability cases. (*Id.* at 2). (Citing *Taylor v. Lemans Corp.*, 998 N.E. 2d 609, 617 (Ill. App. Ct. 2013); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 776 (E.D. Tx. 2000)). In the alternative, Defendants claim that Ohio law should apply pursuant to a choice-of-law provision in a "Terms and Conditions of Sale" agreement made by Defendant Liebert and Fidelity Engineering ("Fidelity"), a construction subcontractor of Wilhelm Commercial Builders. (Defs. Rep. in Supp. of Mot. to Dismiss at 2). Defendants reference the agreement as Exhibit A of their Motion to Dismiss. (*Id.*).

Plaintiff offers *Wise* [*v. Zwiker & Assocs., P.C.*, 780 F.3d 710, 718 (6th Cir. 2015)] in response, arguing this Court should not engage in a choice-of-law analysis. (Pl.'s Sur-Reply at 2, ECF No. 55-1). In *Wise*, the Sixth Circuit declined to decide whether Ohio or Utah law applied in a contract dispute at the pleadings stage due to insufficient facts. *Wise*, 780 F.3d at 718. Second, Plaintiff contends a factual choice-of-law analysis favors Maryland law. (Pl.'s Sur-reply at 3). Specifically, Plaintiff notes: 1) the injury occurred in Maryland, 2) the injury

9

was caused by an air handler that was sold to a company operating in Maryland, and 3) the air handler was permanently installed in a data center in Maryland. (*Id.*).

Third, Plaintiff claims it was not a party to the "Terms and Conditions of Sale" agreement identified by Defendants. (*Id.*). Plaintiff points out that the contract exists between Liebert and Fidelity, a subcontractor who originally purchased the subject air handler from Defendant Liebert. (*Id.*). Furthermore, Plaintiff asserts that Fidelity is neither Inovalon's actual or apparent agent, and therefore cannot be bound by the contractual provision selecting Ohio law. (*Id.* at 4–7).

### a. "Terms and Conditions of Sale" Agreement

The Rule 12(b)(6) "motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio, 2013) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1356 (3d ed. 2004)). Rather, the motion exists to gauge the "formal sufficiency of the statement of the claim for relief." *Id.* Thus, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgement." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). Additional documents are only considered part of the pleadings if they are referenced in the complaint and are central to the plaintiff's claim. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

In the case at bar, Plaintiff did not reference the "Terms and Conditions of Sale" agreement in its Complaint. Nor did Defendants reference the contract in their Answer. Therefore, the choice-of-law provision in the contract between Defendant Liebert and Fidelity

10

cannot be considered part of the pleadings. Accordingly, this Court declines to consider evidence regarding the "Terms and Conditions of Sale" agreement at this juncture.

### b. Choice-of-Law under *Lex Loci Delicti*

As Plaintiff correctly states in its Sur-reply, Maryland choice-of-law rules determine the governing law. (*Id.* at 1). However, neither party analyzes the instant action under Maryland's *lex loci delicti* theory. Instead both Plaintiff and Defendants offer a discussion of Ohio's choice-of-law test adopted from Section 6 of the Restatement (Second) of Conflict of Laws. (*see* Defs.' Rep. in Supp. of Mot. to Dismiss at 1–2; Pl.'s Sur-reply at 2). Defendants' argument in favor of Ohio law focuses on Restatement balancing factors, such as the location of the conduct giving rise to the injury. (Defs.' Rep in Supp of Mot. to Dismiss at 1).

Plaintiff follows suit, assessing: 1) the place of the injury, 2) the location where the conduct causing the injury occurred, 3) the domicile, residence, place of incorporation, and place of business of the parties, 4) the location of the parties' relationship, and 5) any other relevant factors listed in Section 6 of the Restatement (Second) of Conflict of Laws. (Pl.'s Sur-reply at 2–3) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011); *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 474 (1984)).

These analyses, while helpful under Ohio choice-of-law rules, are not applicable in the context of a §1404(a) transfer. Applying Maryland's bright-line *lex loci delicti* theory, the law of the place of the injury controls. *Erie*, 399 Md. at 620. Because Inovalon's servers were damaged in Maryland, the tort law of Maryland applies under *lex loci delicti*.

### 2. Product Liability

Plaintiff seeks to recover under a theory of strict liability, claiming Defendants' product was defective, posed unreasonable danger, and lacked adequate warnings. (Compl. ¶ 26).

11

Maryland first recognized a strict products liability cause of action in *Phipps* [*v. General Motors Corp.*, 278 Md. 337, 353 (1976)], adopting Section 402A of the Restatement (Second) of Torts. Accordingly, Maryland permits recovery under the following theory:

"Special Liability of Seller of Product for Physical Harm to User or Consumer"

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (Am. Law. Inst. 1965)

The *Phipps* court defined "defective condition" as "a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him," as measured at the time the product leaves the seller's hands. *Phipps*, 278 Md. at 344. An "unreasonably dangerous product" is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* Thus, a strict products liability action does not depend on the actions of the manufacturer, but rather on the defective product itself. *Id.*

Defendants apply Maryland law in their Motion to Dismiss, claiming that Plaintiff improperly failed to allege a specific design, manufacturing, or warning defect. (Defs.' Mem. in Supp. of Mot. to Dismiss at 5–6). As Defendants correctly state, a product may be defective in

three ways under Maryland law: 1) manufacture, 2) design, or 3) inadequate or absent warnings. *Simpson v. Standard Container Co.*, 72 Md. App. 199, 203 (1987). Defendants further assert that a plaintiff's decision not to specify which product defect occurred—design, manufacture, or failure to warn—is fatal to its claim. (Defs.' Mem. in Supp. of Mot. to Dismiss at 5).

In support of their contention, Defendants offer *Heck v. American Medical Systems, Inc.*, 2008 WL 1990710, at *3 (D. Md. April 30, 2008), in which the court granted the defendant's 12(b)(6) motion because the plaintiff failed to "articulate a clear strict liability theory" or any facts to support the theory. Defendants also cite *Jeffries* [*v. Boston Scientific Corp.*, 2017 WL 2645723, at *4 (D. Md. June 20, 2017)], where the court dismissed the plaintiff's product liability claim because the pleadings were insufficient to plausibly demonstrate the product's defective design or manufacture.

Defendants' emphasis on the necessity of framing the product liability theory as either a design defect or a manufacturing defect is misplaced. While *Simpson* and *Heck* stand for the proposition that a plaintiff must allege and prove *at least one* design, manufacture, or warning defect, they do not require a plaintiff to plead different defects in different ways. Indeed, numerous courts have suggested strict liability theories should not apply to design defects, due to the difficulty in establishing that the products were designed to be unreasonably dangerous. *Phipps*, 278 Md. at 344–345 (citing *Dorsey v. Yoder Co.*, 331 F.Supp. 753, 759–760 (E.D. Pa. 1971)). However, the *Phipps* court acknowledged there are some designs that qualify as defective and unreasonably dangerous "without the necessity of weighing and balancing" risk factors under a negligence theory. *Phipps*, 278 Md. at 345.

For example, in *Eaton* [*Corp. v. Wright*, 281 Md. 80 (1977)], the court did not "deem it necessary to determine the precise nature—design or manufacturing—of the defect." *Shreve v.*

13

*Sears, Roebuck & Co. and Murray, Inc.*, 166 F.Supp.2d 378, 411 (D. Md. 2001). Instead, the propane torch in question was characterized as defective and unreasonably dangerous after exploding under correct usage within an hour of purchase. *Id.*

Here, Plaintiff did not elaborate on whether the copper tube, compressor, and air handler were defective in design or manufacture. (Compl. ¶ 1). This alone is not fatal to Plaintiff's claim. However, Plaintiff is required to articulate facts which make its claims plausible. *Iqbal*, 556 U.S. 662. As Defendants accurately point out, providing "facts that are 'merely consistent with a defendant's liability' fail to nudge claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570).

Defendants argue Plaintiff's Complaint "says little more than simply labeling the product defective." (Defs.' Mem. in Supp. of Mot. to Dismiss at 4). They analogize Plaintiff's pleadings to those in *Bloom* [*v. Depuy Orthopedics, Inc.*, 2011 WL 1135753, at *2 (D. Md. March, 25, 2011)], where the pleadings were insufficient because they did not include: which products might be defective, how they failed, or how a non-defective product would have functioned. (Defs.' Mem. in Supp. of Mot. to Dismiss at 5). In addition, Defendants note the *Jeffries* and *Heck* courts also cited lack of sufficient factual support as grounds for dismissing the plaintiffs' claims. *Jeffries.*, 2017 WL 2645723, at *4; Heck, 2008 WL 1990710, at *3. According to Defendants, Plaintiff's Complaint is similarly devoid of sufficient detail. (Defs.' Mem. in Supp. of Mot. to Dismiss at 5). For instance, instead of identifying which air handler allegedly failed, Plaintiff merely asserts that:

> 18. On or about January 24, 2016, a copper tube, carrying refrigerant which was part of a compressor contained within one of the Liebert air handlers located in the data center failed, releasing refrigerant, which in turn caused the fire suppression system to activate, shutting off power to the air handlers serving the data center.

14

Compl. ¶ 18.

However, Plaintiff correctly states that the *Iqbal* and *Twombly* plausibility requirement only "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 556. Technical details as to why or how Defendants' products malfunctioned may be unattainable without discovery. Furthermore, Plaintiff distinguishes the instant action from *Bloom* by pointing to the specific facts in its Complaint. (Pl.'s Opp'n at 10). While the plaintiff in Bloom named six medical devices in her complaint, she included no details regarding how they failed or how they functioned differently from a normal product. *Bloom*, 2011 WL 1135753, at *2. In sum, the plaintiff conveyed "no more than that something happened that should not have." *Id.* Here, Plaintiff contends it pled sufficient detail by alleging a copper tube within the compressor in Defendants' air handler failed by leaking refrigerant. (Pl.'s Opp'n at 10).

Moreover, Plaintiff points out that Maryland honors the "indeterminate defect" theory, which permits the inference of a defect "where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." (Pl.'s Opp'n. at 7) (quoting *Main St. Am. Grp. V. Sears, Roebuck, & Co.*, 2010 WL 956178, at *8 (D. Md. Mar. 11, 2010). To apply the indeterminate defect theory, courts weigh five factors: 1) expert testimony regarding causation, 2) the occurrence of the accident shortly after sale, 3) other accidents in similar products, 4) the elimination of other causes, and 5) the notion that this type of accident does not happen without a defect. *Id.* Because these factors require a factual inquiry, Plaintiff argues they are better analyzed after the pleading stage. *Id.* (court applied indeterminate theory factors on summary judgment). *See also, Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 786 (D. Md. 2012) (indeterminate theory factors weighed on summary judgment, after discovery).

Finally, in distinguishing *Heck* and *Jeffries*, Plaintiff argues the pleadings were not plausible in those cases because the plaintiffs asserted facts which directly contradicted essential product liability elements. (Pl.'s Opp'n at 8). For instance, in *Jeffries*, the plaintiff attached medical records to its filings which stated the defendant's product was not the cause of the injuries. *Jeffries*, 2017 WL 2645723, at *3. Similarly, the plaintiff in *Heck* suggested the product was not defective when it left the defendant's control. *Heck*, 2008 WL 1990710, at *3.

This Court agrees with Plaintiff's analysis. Although Plaintiff did not explain why or how the copper tube leaked refrigerant at a scientific level, it asserted sufficient facts which render a product defect plausible. Consequently, this Court **DENIES** Defendants' Motion to Dismiss Plaintiff's product liability claim under Rule 12(b)(6).

### 3. Negligence

To assert a negligence claim under Maryland law, the plaintiff must plead sufficient facts to establish that: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached this duty; 3) the plaintiff suffered actual loss or damages; and 4) the defendant's breach of the duty proximately caused the loss or damage. *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 293 (2018). In the context of negligently designed or manufactured products, Maryland law rests on the common law principle "that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury." *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 211 (1974) (quoting *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir. 1968)).

In the case *sub judice*, Plaintiff claims that Defendants failed to exercise ordinary care in the design, manufacture, and sale of the copper tube, compressor, and air handler. (Compl. ¶ 31). Plaintiff further contends the incident on January 24, 2016 was "a direct, proximate, and

16

foreseeable result of the negligence and lack of ordinary care" exercised. (*Id.* ¶ 33). Specifically, Plaintiff pleads that:

- Defendants Liebert and Emerson designed, manufactured and sold the air handler, compressor and copper tube at issue [Ex. A, Complaint, at ¶¶ 12-15];

- Defendants knew and intended that their products would be utilized to service a data center full of servers and computer equipment, such as the data center operated by Inovalon [*Id.*];

- The air handler, compressor and copper tube were designed, manufactured and sold by Defendants in such a manner that they were unreasonably dangerous and defective when they left Defendants' control [*Id.* at ¶¶ 25-27];

- Defendants failed to warn Inovalon about the dangers associated with their products [*Id.*]; and

- The defective nature of Defendants' products caused the copper tube within a compressor of the Liebert air handler to fail, allowing refrigerant to escape, and resulting in significant damage to Inovalon's business and property [*Id.*, at ¶¶ 18-9; 22-3; 27-8; 33-4].

Pl.'s Opp'n at 11.

Defendants argue Plaintiff's negligence claim must be dismissed because it fails to explain *how* Defendants were negligent. (Defs.' Mem. in Supp. of Mot. to Dismiss at 8). In support, Defendants cite *Heck*, 2008 WL 1990710, at *3, where the court dismissed plaintiff's claim because his amended complaint did not suggest how the defendant breached a duty or caused the plaintiff harm. According to Defendants, Plaintiff's Complaint merely recites the

17

elements of negligence without including specific supporting facts. (Defs.' Mem. in Supp. of Mot. to Dismiss at 8).

This Court disagrees. *Heck* is distinguishable from the instant action because Plaintiff identified the duty owed as ordinary care and alleged specific harm to Inovalon's business property. Plaintiff's Complaint places Defendants "on notice of the factual underpinnings and nature of Plaintiff's negligence claim." (Pl.'s Opp'n at 11). Accordingly, this Court **DENIES** Defendants' Motion to Dismiss Plaintiff's negligence claim.

## IV.

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Dismiss in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

9-25-2018
**DATE**

**EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT J**